No. 91-062

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

RALPH BAERTSCH; TERRY A. BROWNE and SUSAN G. BROWNE, husband
and wife; INGRAM-CLEVENGER, INC., a Montana corporation;
NORMA J. ANDRIOLO; CLINTON H. JENKS and VICTORIA J. JENKS,
husband and wife; GEORGE RANDALL FRASER and MARY E. FRASER,
husband and wife; GERALD VERN EVANS and YVONE J. EVANS,
husband and wife; GEORGE A. ALGARD and SUSAN E. ALGARD,
husband and wife; HAROLD F. CRANMER and JANET CRANMER,
husband and wife; CHARLES J. KASSNER; CARL SAMUEL PEIL and
PAMELA A. PEIL, husband and wife; FORREST A. BAERTSCH;
McHUGH LAND & LIVESTOCK CO., a Montana corporation;
PETER J. McHUGH, JR. and MARY J. McHUGH, husband and wife;
DAVID B. HAHN and CAROL W. HAHN, husband and wife,

        Plaintiffs and Appellants,

v.

COUNTY OF LEWIS AND CLARK, a political subdivision of the
State of Montana, and all other persons unknown, claiming or
who might claim any right, title, estate or interest in, or
lien or encumbrance upon, the real property described in the
Complaint, or any thereof, adverse to plaintiffs' ownership,
or any cloud upon plaintiffs' title thereto, whether such claim
or possible claim be present or contingent, including any claim
or possible claim of dower, inchoate or accrued,

        Defendant and Respondent.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

R. J. "Jim" Sewell, Jr., Lewis Smith,
Smith Law Firm, Helena, Montana

For Respondent:

Michael McGrath, Lewis and Clark County
Attorney, K. Paul Stahl, Deputy County
Attorney, Helena, Montana

FILED

DEC 3 0 1992

Filed:
Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: May 14, 1992

Decided: December 30, 1992

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

This is an appeal from the judgment of the District Court of the First Judicial District, Lewis and Clark County. Plaintiffs, a group of landowners owning property adjacent to McHugh Drive near Helena (landowners), brought suit against defendant Lewis and Clark County (County) over a dispute regarding the right-of-way to McHugh Drive. The County claims a 100-foot right-of-way easement for McHugh Drive. The landowners contend, based on various legal theories, that the right-of-way is considerably less than 100 feet. The District Court found in favor of the County under all arguments presented by the landowners, with the exception of the landowners' argument based on res judicata. However, not all of the landowners prevailed under the District Court's application of the doctrine of res judicata. The landowners appeal from the judgment of the District Court. We affirm.

The landowners present the following issues for consideration by this Court:

1. Did the District Court err in determining that the 1890 conveyances granting the County a 100-foot right-of-way were properly recorded so as to impart constructive notice of their contents to the general public?

2. Did the District Court err in determining that the original dedication of the 100-foot right-of-way in 1890 was done in accordance with the proper statutory procedure?

3. Did the District Court err in determining that the County had not abandoned the disputed portion of the right-of-way?

2

4. Did the District Court err in determining that the landowners, through their predecessors in interest, did not acquire ownership of the disputed portion of the right-of-way by adverse possession?

5. Did the District Court err in determining that the County's claim to the disputed right-of-way was not barred by the doctrine of equitable estoppel?

6. Did the District Court err in determining that the doctrine of res judicata did not bar the County's claim to the disputed right-of-way as to some of the landowners?

The landowners' appeal presently before this Court is the latest development in what has been a lengthy dispute between the parties over the right-of-way to McHugh Drive. The relevant facts of this case have previously been set out in two prior decisions of this Court. The first decision in this matter was Ingram-Clevenger, Inc. v. Lewis and Clark County (1981), 194 Mont. 43, 636 P.2d 1372. In Ingram-Clevenger, we set out the factual and procedural history of the case stating that:

> McHugh Lane (or Drive) is a county road running north-south through the Helena Valley. In 1890, Lewis and Clark County was granted a 100-foot right-of-way to establish the road.
>
> On June 6, 1980, plaintiffs presented the board of county commissioners with a petition signed by every landowner owning property adjacent to McHugh Lane. The petition requested that the County abandon forty feet of the McHugh Lane right-of-way (twenty feet on each side). The petition was discussed at a regularly scheduled and noticed hearing of the Lewis and Clark County Commissioners on July 22, 1980. At this time, the commissioners found the petition to be in proper form required under section 7-14-2602, MCA, a finding

3

> reiterated in defendant's brief. The commissioners denied the petition.
>
> On August 22, 1980, plaintiffs filed suit, seeking a peremptory writ of mandamus against Lewis and Clark County, the board of county commissioners and the three county commissioners. Oral argument as to the applicable law was heard on September 3, 1980. Briefs were submitted at the District Court judge's request. On October 20, 1980, the District Court issued its order and opinion, granting plaintiffs' writ of mandate and directing the board of county commissioners to forthwith grant the petition to partially abandon McHugh Lane.

Ingram-Clevenger, 636 P.2d at 1373.

The County brought an appeal from the District Court's order granting plaintiffs' writ of mandamus. In Ingram-Clevenger, for reasons not important to the present appeal, this Court vacated the order of the District Court, finding that mandamus did not lie.

Following this Court's decision in Ingram-Clevenger, the plaintiffs brought an action on April 29, 1982, for declaration that they had obtained title to the disputed portion of the 100-foot right-of-way. The issues raised in that suit are essentially the same issues raised on this appeal. The County raised the defense of res judicata to the plaintiffs' action, alleging that this Court's decision in Ingram-Clevenger barred the plaintiffs' action. The District Court agreed. Following a bench trial the District Court dismissed the landowners' complaint, and quieted title in the County to the 100-foot right-of-way. The landowners brought an appeal from the judgment of the District Court, and in Baertsch v. County of Lewis and Clark (1986), 223 Mont. 206, 727 P.2d 504, this Court reversed the judgment of the District Court. In Baertsch, we stated that:

4

> We conclude that the issues in the two cases are not
> the same. In <u>Ingram-Clevenger</u> the request of the
> landowners was for the vacation of a portion of McHugh
> Drive under the statutory authority granted to the County
> Commissioners. The title or ownership to the Drive was
> not in any manner involved in that proceeding. In
> contrast, the essential claims in the present case are
> issues relating to the title to the McHugh Drive roadway
> itself. Such issues could not have been properly
> presented as a part of the proceeding for vacation of
> McHugh Drive. The Board of County Commissioners has no
> authority to adjudicate title.

<u>Baertsch</u>, 727 P.2d at 506-07.

In <u>Baertsch</u>, we determined that the plaintiffs' action was not barred by the doctrine of res judicata and remanded for trial of the issues on the merits. Upon remand, the parties agreed to submit the matter to the District Court for a decision on the merits of landowners' allegations based on briefs, oral argument, and the prior trial record. Oral argument was held on May 3, 1990. The parties were given 30 days to file findings at which time the matter would be deemed submitted for decision. On November 16, 1990, the District Court filed lengthy and detailed findings of fact, conclusions of law, and order in this matter. The District Court found in favor of the County under all legal theories raised by landowners, with the exception that certain of the landowners prevailed on the theory of res judicata. Landowners brought this appeal.

I

Did the District Court err in determining that the 1890 conveyances granting the County a 100-foot right-of-way were

5

properly recorded so as to impart constructive notice of their contents to the general public?

The parties disagree as to the appropriate standard of review to be utilized by this Court in this case. On appeal, this Court will not set aside factual determinations made by a district court sitting without a jury unless they are clearly erroneous. Rule 52(a), M.R.Civ.P. Concerning our review of conclusions of law, this Court will simply determine whether the lower court's interpretation of the law was correct. We are not bound by the trial court's conclusions and remain free to reach our own. Schaub v. Vita Rich Dairy (1989), 236 Mont. 389, 770 P.2d 522.

The petition for Forestvale Road (now McHugh Drive), granted in 1890 by the county commissioners, was never filed as a conveyance. Landowners contend that the 1890 documents granting the disputed right-of-way to the County were not properly recorded and indexed as conveyances, and therefore, failed to give adequate notice to the public that the right-of-way was 100 feet. Pursuant to various sections of the 1887 Compiled Statutes of Montana (CSM) which governed in 1890, all conveyances that were not recorded and indexed as required by law were void against any subsequent purchasers in good faith and for valuable consideration. The District Court found that the original petition and accompanying deeds were not recorded or indexed as conveyances.

The County argues that the 1890 documents creating the right-of-way did not have to be recorded and indexed as conveyances. The County contends that § 1823, CSM (1887), as the

specific statute governing the creation of roads, sets out the only procedure necessary for the creation of roads. Section 1823, CSM (1887), provides that:

> Whenever a petition shall be presented to the board of county commissioners of any county of this territory praying for a public highway, and the names of all the owners of all the land through which said road is to be laid out, shall be signed thereat, giving the right of way through the lands, and accompanied by a plat of the road, it shall be the duty of the county commissioners, if in their opinion the public good requires it, to declare the same a public highway, and thereupon the plat shall be filed and recorded, and the same shall become a public highway from and after that date. [Emphasis added.]

Landowners contend the filing and recording of the plat as described in § 1823, CSM (1887), is in addition to the recording and indexing as a conveyance. The District Court agreed with the County. The District Court stated that:

> This specific statute on the creation of public rights-of-way for counties takes precedence over any other statute dealing with recording or indexing conveyances. According to Section 1823, the plat shall be filed and recorded. It is uncontested that the plat was filed and recorded. See Defendants' Exhibit M, Road Index, and Plat Book 1, page 38, Defendants' Exhibit O. The statutes under which the county commissioners were operating in 1890 were met. There is no requirement that the petition, plat, or deeds be filed and recorded as conveyances. The terms of the specific statute on how to create a road take precedence over the more general statute on recording conveyances.

Landowners point out that pursuant to the existing statutes the filing and recording of the plat as described in § 1823 was "to be recorded in the office of the county clerk and recorder in the book kept for that purpose." Section 1817, CSM (1887). Landowners presented evidence that the record book of roads was not always

7

kept in the clerk and recorder's office, and therefore, the public was not put on notice of the 100-foot right-of-way claimed by the County. The County presented evidence that although the book was not always kept in the office of the clerk and recorder, the location of the book was always known and available to the public.

Clearly the statutes in question were not models of clarity. Additionally, there was conflicting testimony as to the location and availability of the record book over the years. However, the District Court, after having had the opportunity to listen to and observe the testimony of the witnesses, determined that the procedural requirements of the statute had been satisfied. We cannot say that the decision of the District Court was clearly erroneous.

## II

Did the District Court err in determining that the original dedication of the 100-foot right-of-way in 1890 was done in accordance with the proper statutory procedure?

Section 1822, CSM (1887), provided that unless otherwise ordered by the board of county commissioners, all public highways created in the Territory of Montana shall be 60 feet in width. Landowners contend that the county commissioners acting in 1890 did not specifically order the public highway in the present location of McHugh Drive to be 100 feet in width, and therefore, the width is only 60 feet, as provided by the statute governing at the time. However, the petition, plat, and dedication presented to the county commissioners in 1890 all showed that the right-of-way was 100

8

feet. Specifically, the petition read in part that "said public road or highway should be 100 feet wide, being fifty feet wide on each side of said quarter section line . . . ." The county commissioners granted the petition. We hold that the District Court was correct in concluding that the county commissioners, in granting the petition, "were obviously granting its contents, which was a request for a 100-foot right-of-way."

III

Did the District Court err in determining that the County had not abandoned the disputed portion of the right-of-way?

Landowners contend that the County abandoned all but 60 feet of the right-of-way. The District Court disagreed, concluding that the evidence was neither decisive nor conclusive that the County intended to abandon the full right-of-way. Additionally, the District Court concluded that the statute concerning abandonment of County roads had not been met. Section 7-14-2615, MCA, sets forth the procedure for abandoning county roads and provides that:

> (1) All county roads once established must continue to be county roads until abandoned or vacated by:
>
> (a) operation of law;
>
> (b) judgment of a court of competent jurisdiction; or
>
> (c) the order of the board.
>
> (2) No order to abandon any county road shall be valid unless preceded by notice and public hearing.

One of the elements necessary to prove abandonment of public property by governmental entities is a showing of a clear intent to

9

abandon. The conduct claimed to demonstrate this intent must be of character so decisive and conclusive as to indicate a clear intent to abandon. Rumph v. Dale Edwards, Inc. (1979), 183 Mont. 359, 600 P.2d 163. The conduct must be some affirmative official act, and not mere implication. Mere nonuse, even for extended periods of time, is generally insufficient, by itself, to indicate an intent to abandon. City of Billings v. O. E. Lee Co. (1975), 168 Mont. 264, 542 P.2d 97. The District Court's finding that the County had not manifested any intent to abandon the disputed portion of the right-of-way is not clearly erroneous.

IV

Did the District Court err in determining that the landowners, through their predecessors in interest, did not acquire ownership of the disputed portion of the right-of-way by adverse possession?

Landowners contend that they have satisfied the requirements for obtaining land by adverse possession. The County responds by arguing that Montana law provides that title to public roads may not be obtained by adverse possession. The general rule concerning adverse possession of public roads, followed in the majority of jurisdictions, is that:

> It is a widely accepted general rule, sometimes embodied in statute, that the statute of limitations does not run in favor of those who occupy property held for public use as a street or highway, and that title cannot be acquired thereto by such occupancy, no matter how long occupancy has been continued and whatever may have been its character. So, it has been held that the rights of the public in its highways cannot be lost by acquiescence in the use or occupation thereof by individuals, even though such highways have not been opened or used.

10

3 Am. Jur. 2d Adverse Possession § 271 (1986). A minority of jurisdictions take the view that public roads may be acquired by adverse possession in some situations.

Montana law in this area clearly follows the general rule that title to public roads may not be obtained by adverse possession. In City of Billings v. Pierce Packing Company (1945), 117 Mont. 255, 161 P.2d 636, this Court held that public roads may not be obtained by adverse possession. Pierce Packing is still the law of Montana today and we decline to adopt the landowners' suggestion that Montana join the minority of jurisdictions which allow title to public roads to be obtained by adverse possession. We hold that the District Court was correct in concluding that landowners did not obtain title to the disputed right-of-way through adverse possession.

V

Did the District Court err in determining that the County's claim to the disputed right-of-way was not barred by the doctrine of equitable estoppel?

Landowners contend that the County is equitably estopped from claiming title to the 100-foot right-of-way to McHugh Drive. Landowners have placed various improvements within the 100-foot right-of-way claimed by the County. Landowners contend that based upon the conduct of the County and the nature of the improvements, that the County must be equitably estopped from claiming title in order to prevent a manifest injustice to the landowners.

11

The County argues that equitable estoppel will only be used against public property in exceptional cases and then only with great caution. Pierce Packing, 161 P.2d at 640. The County contends equitable estoppel against a governmental entity is looked upon with great disfavor, even in situations in which there may be some wrongful conduct on the part of government officials. Chennault v. Sager (1980), 187 Mont. 455, 610 P.2d 173. The District Court relied heavily on this Court's opinion in Pierce Packing wherein we stated that:

> "But where the road has been established and continually used, the mere fact that the fences bordering it are not on the true line and the portion beyond has been occupied by the landowner up to the fence and not made use of by the public will not work an estoppel against the public, but the entire width of the highway may be appropriated by the public whenever required for the purposes of travel . . . ."

Pierce Packing, 161 P.2d at 639.

The rationale underlying the general rule that equitable estoppel is not applicable against governmental entities is the overwhelming interest of the public in maintaining public lands. This Court has stated that "[i]rrespective of the negligence of public employees and officials, however, the foremost consideration in our minds lies with the protection of the public interest." Chennault, 610 P.2d at 177. Public roads in particular are protected in that "[n]o other kind of public property is subject to more persistent and insidious attacks or is less diligently guarded against seizure." Pierce Packing, 161 P.2d at 640.

12

Landowners point out that this Court has previously recognized that a governmental entity may be equitably estopped from claiming an interest in public land under exceptional circumstances. In Town of Boulder v. Bullock (1981), 193 Mont. 493, 632 P.2d 716, this Court held that the town was estopped from claiming an injunction from further construction or requiring the removal of an individual's building encroaching on a portion of a public street. Landowners argue that the present case presents the type of exceptional circumstances as existed in Bullock.

Landowners point out that the County has not used the disputed portion of the right-of-way for public benefit for over 90 years. In fact, the County has accepted and approved plats of subdivisions showing the right-of-way to be less than 100 feet. It was stipulated by the parties, and accepted by the District Court, that all the landowners accepted and recorded deeds to land within the 100-foot right-of-way of McHugh Drive. Landowners contend that such acquiescence to private use, along with the improvements made over the years by the landowners, justifies the application of the doctrine of equitable estoppel in this case. The District Court found that not applying equitable estoppel in this situation would not result in manifest injustice to landowners. Taking into consideration the public interest in maintaining public property, we cannot say that the District Court's determination that the doctrine of equitable estoppel did not apply in this situation is clearly erroneous.

13

# VI

Did the District Court err in determining that the doctrine of res judicata did not bar the County's claim to the disputed right-of-way as to some of the landowners?

The District Court found that over the years there had been four quiet title actions in which it had been judicially determined that the County's right-of-way to McHugh Drive was less than 100 feet. The District Court determined that as a result of two of these actions, the doctrine of res judicata barred the County from asserting a 100-foot right-of-way against certain of the landowners. The criteria which must be met before the doctrine of res judicata will be applied are:

(1) [T]he parties or their privies must be the same;
(2) the subject matter of the action must be the same;
(3) the issues must be the same, and must relate to the same subject matter; and (4) the capacities of the person must be the same in reference to the subject matter and to the issues between them.

First Bank Missoula v. District Court (1987), 226 Mont. 515, 520, 737 P.2d 1132, 1135. Landowners argue that all four quiet title actions should act as a bar to the County's claim of a 100-foot right-of-way. The County contends that the doctrine of res judicata does not apply.

The two actions which the District Court found acted as a bar to the County's claim clearly satisfy the four criteria of res judicata. In one of the other quiet title actions, the plaintiff was Forestvale Cemetery. Forestvale Cemetery is not a party to this action, nor is it a predecessor in interest to any of the

14

present landowners. The quiet title action involving Forestvale Cemetery, which determined the County's right-of-way was less than 100-feet, is not res judicata in this instance because the prior litigation did not involve the present parties or their predecessors in interest. The other quiet title action did not name the County as a defendant. Landowners contend that while not specifically mentioned in the action the County was served by publication as an unknown person who might have an interest in the property. This procedure may be sufficient to bring an unknown party into the action, but only after the plaintiff has used "reasonable diligence" to locate the specific individuals with an interest in the property. Joseph Russell Realty Co. v. Kenneally (1980), 185 Mont. 496, 605 P.2d 1107; Rule 4D(2)(f), M.R.Civ.P. The District Court was correct in concluding that the County was not properly a party to the prior litigation, and therefore, res judicata does not apply. We affirm the conclusions of the District Court.

Affirmed.

_____
Justice

We concur:

_____

Karla M. Gray

R. C. McDonough

Justices

December 30, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

R.J. "JIM" SEWELL
Smith Law Firm, P.C.
P.O. Box 604
Helena, MT  59624

MICHAEL McGRATH
K. PAUL STAHL
County Attorney's Office
Lewis & Clark County Courthouse
Helena, MT  59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
   Deputy